**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| ANDRIA D. B., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-cv-00439-SH |
| | ) |
| KILOLO KIJAKAZI,[1] Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Andria D. B. requests judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-434. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For the reasons explained below, the Court reverses and remands the Commissioner's decision denying benefits.

**I.    Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

---

[1] Effective July 9, 2021, pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). Under the five-step process, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. pt. 404, subpt. P, app. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do his past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart,* 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). The

Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Background and Procedural History

Plaintiff applied for Title II benefits, with a protective filing date of April 23, 2018. (R. 15, 166-67.) Plaintiff alleges she has been unable to work since an amended onset date of September 5, 2017, due to posttraumatic stress disorder ("PTSD"), low back pain from a broken tailbone, bulging discs in her lumbar spine, and vulvar cancer. (R. 35, 190.) Plaintiff was 37 years old on the date of the ALJ's decision. (R. 25, 166.) She has a high school education and past relevant work as a nurse aide. (R. 52, 191.)

Plaintiff's claim for benefits was denied initially and on reconsideration, and she requested a hearing. (R. 61-88, 104-05.) ALJ Lantz McClain conducted the hearing and issued a decision on November 25, 2019, finding Plaintiff not disabled. (R. 15-25, 32-56.) The Appeals Council denied review on July 2, 2020 (R. 1-6), rendering the Commissioner's decision final. 20 C.F.R. § 404.981. Plaintiff timely filed this appeal on August 31, 2020 (ECF No. 2), within 65 days of that order. *See* 20 C.F.R. § 422.210(c).

## III.    The ALJ's Decision

In his decision, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the amended onset date September 5, 2017. (R. 17-18.) At step two, the ALJ found Plaintiff had the severe impairments of degenerative disc

3

disease, PTSD, and panic disorder. (R. 18.) At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment. (R. 18-19.)

The ALJ then determined Plaintiff had the RFC to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b), with the following non-exertional limitations:

> The claimant can perform simple, repetitive tasks. The claimant can only occasionally interact with supervisors and co-workers. The claimant should not work with the public.

(R. 19.) The ALJ provided a summary of the evidence that went into this finding. (R. 20-23.)

At step four, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff could not return to her past relevant work. (R. 23.) At step five, however, the ALJ concluded that Plaintiff could perform other occupations existing in significant numbers in the national economy, including mailroom clerk and folder. (R. 24.) The ALJ thus found Plaintiff was not disabled. (R. 25.)

## IV. Issues

Plaintiff asserts the ALJ erred by: (1) failing to properly evaluate the medical opinion of Dr. Brent Hinkle (ECF No. 22 at 6-11); and (2) failing to resolve an apparent conflict between the VE's testimony and the reasoning level three assigned by the Dictionary of Occupational Titles ("DOT") to the mailroom clerk job, rendering his findings at step five not supported by substantial evidence. (*Id.* at 11-13.) The Court finds the ALJ erred in failing to resolve the conflict and reverses on this basis. The Court does not address Plaintiff's first argument.

## V. Analysis

Once Plaintiff met her burden of showing she could not perform her past relevant work, the Commissioner had the burden "at step five to show that the claimant retains

4

sufficient RFC to perform work in the national economy, given her age, education, and work experience." *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart,* 395 F.3d 1168, 1171 (10th Cir. 2005) (alteration omitted)). An ALJ may rely on the testimony of a VE to satisfy the step-five burden and identify jobs that a claimant can perform—so long as all the RFC limitations are reflected in the hypothetical question propounded to the VE. *See Qualls v. Apfel,* 206 F.3d 1368, 1373 (10th Cir. 2000).[2]

In this case, the ALJ posed a hypothetical question to the VE that matched the RFC assessment set forth above, and the VE identified two light, unskilled jobs a hypothetical person with Plaintiff's age, education, and work history could perform: mailroom clerk and folder. (R. 19, 52-53.) The VE testified there were 240,000 mailroom-clerk jobs and 84,000 folder jobs in the national economy. (R. 53.) Based on this testimony, the ALJ concluded Plaintiff could perform the jobs of mailroom clerk and folder and found these jobs (which totaled 324,000 jobs) existed in significant numbers in the national economy. (R. 24-25.) The ALJ also determined that the VE's testimony was consistent with the information contained in the DOT. (R. 24.)

### A. Conflict Between the DOT and the VE's Testimony

While an ALJ can rely on the VE's expert testimony at step five, this reliance has its limits. An ALJ has a duty to develop the record, which includes questioning the VE about the source of her opinions and any deviations from publications like the DOT. *Haddock v. Apfel,* 196 F.3d 1084, 1091 (10th Cir. 1999). As such, "the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and

---

[2] In *Qualls*, the court found, where the ALJ "propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment," "the VE's answer to that question provided a proper basis for the ALJ's disability decision." *Id.*

5

expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Id.*; *see also* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) ("When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a . . . decision about whether the claimant is disabled.").

In this case, the conflict between the VE's testimony and the DOT relates to one job's "reasoning level" as applied to the mental limitations in the RFC. The DOT appends a "definition trailer" to each job, which is comprised of a number of selected occupational characteristics, including the General Educational Development ("GED") Scale. *See* DOT, app. C, 1991 WL 688702 (4th ed. 1991). The GED Scale is divided into three subparts: Reasoning Development, Mathematical Development, and Language Development. *Id.* There are six levels for each GED Scale subpart, with level one representing the lowest development level and level six representing the highest. *Id.*

The DOT assigns the mailroom-clerk job a reasoning level of three. DOT § 209.687-026, 1991 WL 671813. This means the job requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.* As Plaintiff correctly points out, the Tenth Circuit has recognized an apparent conflict between jobs requiring level-three reasoning and an RFC limitation of "simple and routine work tasks." *Hackett,* 395 F.3d at 1176 (stating that an RFC limitation of simple and routine work tasks "seems inconsistent with the demands of level-three reasoning," and reversing and remanding to allow the ALJ to address this "apparent conflict"). The same apparent conflict exists in this case. The RFC limited

Plaintiff to "simple, repetitive tasks," yet the VE identified a job in the DOT requiring a reasoning level of three.

The Commissioner contends that the ALJ complied with SSR 00-4p by the following exchange:

> Q    Now in your opinion, is the reasoning level of those jobs [mailroom clerk and folder] consistent with the limitations to simple, repetitive tasks?
>
> A    Yes, Your Honor.

(R. 53.) The Commissioner argues that this resulted in there being no "apparent conflict" for the ALJ to resolve and complied with SSR 004-p.[3] It did neither.

Once it appears there is a conflict between the VE's testimony and the DOT, the ALJ must resolve that conflict in a reasoned manner—and not with a generalized affirmation that there are "no conflicts." That is, the ALJ "must explain the resolution of the conflict irrespective of how the conflict was identified." SSR 00-4p, at *4; *see also Haddock,* 196 F.3d at 1090 ("To allow an ALJ to elicit and rely on summary conclusions given by a VE, in the absence of contrary testimony elicited by the claimant through cross-examination, would amount to shifting the burden to produce and develop vocational

---

[3] The Commissioner also appears to assert that it is somehow unsettled whether there is, facially, an "apparent conflict" between simple, repetitive tasks and reasoning level three, noting that the *Hackett* court simply speculated that "a reasoning level three job *seemed* inconsistent with a limitation to simple, routine tasks." (ECF No. 29 at 13.) To the extent there is any confusion in the Commissioner's mind, the Court points out that—in the 15 years between *Hackett* and the ALJ's decision in this case—courts have continued to find an apparent conflict between simple, routine/repetitive tasks and reasoning level three. *See, e.g., Paulek v. Colvin,* 662 F. App'x 588, 594 (10th Cir. 2016) (unpublished) (reversing to resolve conflict); *Garcia v. Barnhart,* 188 F. App'x 760, 767 (10th Cir. 2006) (unpublished) (noting that *Hackett* "found a facial conflict between a claimant's 'inability to perform more than simple and repetitive tasks' and the 'level-three reasoning' required in the DOT for jobs identified by the VE" and emphasizing that, on remand, the ALJ needed to "heed the guidance provided by [the Tenth's Circuit's decisions] in *Hackett* and *Haddock*").

evidence back to the claimant."). Or, as the Social Security Administration's own rulings state it,

> In these situations, the adjudicator will:
>
> Ask the VE . . . if the evidence . . . she has provided conflicts with information provided in the DOT;
>
> <u>and</u>
>
> If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p at *4 (emphasis added). If an ALJ only had to ask the VE if any conflict existed and move on if she said "no," then the second requirement would read differently and merely require the ALJ to obtain a reasonable explanation for the conflict identified by the VE. Instead, the ruling requires <u>the ALJ</u> to consider whether the VE's evidence appears to conflict with the DOT and, if so, seek an explanation in that instance. Here, under longstanding Tenth Circuit law, there was an apparent conflict. Because the ALJ was required to, but did not, elicit additional testimony from the VE explaining how Plaintiff can perform level-three reasoning with an RFC limitation of simple, repetitive tasks, the ALJ erred in determining Plaintiff could perform the job of mailroom clerk. Or, as the Tenth Circuit has explained,

> Though the ALJ asked the VE whether his testimony was consistent with the DOT, it clearly was not . . . . Thus, there is a conflict between the VE's testimony and the job descriptions . . . . The ALJ failed to have the VE reconcile this conflict and therefore committed reversible error. On remand, to comply with *Haddock*, the Commissioner will need to elicit a reasonable explanation as to how Mr. Paulek can perform level-three reasoning jobs with a limitation to carrying out simple instructions . . . ."

*Paulek*, 662 F. App'x at 594.[4] The ALJ's step-five determination as to the mailroom-clerk job is not supported by substantial evidence.

---

[4] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

B.  **Sufficient Number of Jobs in the National Economy**

Having found an unresolved apparent conflict between the RFC and one, but not all, of the jobs identified by the VE, the Court must now examine whether the ALJ's step-five error was harmless.[5]  The Commissioner contends that it was, because 84,000 folder jobs remain nationally.  The Court disagrees.

Under the Act, work exists in significant numbers in the national economy when it exists in such numbers either in the region where the claimant lives or in several other regions of the country.  42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1566(a).  Determining what constitutes a significant number of jobs is normally a question of fact for the ALJ to decide based on "common sense in weighing the statutory language as applied to a particular claimant's factual situation."  *Allen v. Barnhart,* 357 F.3d 1140, 1144 (10th Cir. 2004) (quoting *Trimiar v. Sullivan,* 966 F.2d 1326, 1330 (10th Cir. 1992)).  Here, the ALJ did not find that the 84,000 folder jobs existed in significant numbers in the national economy.  Instead, the ALJ found that, overall, there were sufficient jobs, citing occupations with a combined total of 324,000 jobs.  (R. 24.)  A finding of numerical significance as to the folder job, standing alone, is missing.

A reviewing court may supply a missing dispositive finding of fact under the rubric of harmless error where "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."  *Allen*, 357 F.3d at 1145.  However, this Court must be cautious in "deciding in the first instance that a particular number was significant under the circumstances," because it must "avoid usurping the

---

[5] The DOT assigns the folder job a reasoning level of two.  DOT § 369.687-018, 1991 WL 673072.  Plaintiff does not allege an apparent conflict between the RFC and the reasoning level for this job, nor does the Court perceive one.

9

administrative tribunal's responsibility to find the facts" and must not violate "the general rule against post hoc justification of administrative action . . . ." *Id.* at 1144-45.

As the Commissioner notes, the Tenth Circuit has held that an ALJ's erroneous inclusion of conflicting jobs at step five was harmless error where the remaining nonconflicting jobs existed in sufficiently significant numbers in the national economy. *See, e.g., Raymond v. Astrue,* 621 F.3d 1269, 1274 (10th Cir. 2009) (finding 1.34 million remaining jobs in the national economy significant). The Commissioner goes on to claim that "the Tenth Circuit has affirmed the Commissioner's decision in cases with job numbers much lower than the 84,000 jobs at issue here," citing two unpublished cases as examples. (ECF No. 29 at 14 (citing *Evans v. Chater,* 640 F. App'x 731, 736 (10th Cir. 2016) (unpublished) and *Garcia v. Comm'r*, 817 F. App'x 640, 648-50 (10th Cir. 2020) (unpublished)).)

The Court turns to *Evans* first. *Evans* was an attorney-fee case; it did not involve affirming a commissioner's decision on the merits. 640 F. App'x at 733. However, in a very roundabout way, the Commissioner cites *Evans* for the proposition that another case, *Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2019), "implied that 11,000 national jobs was a significant number." (ECF No. 29 at 14.) This statement does, in fact, appear in *Evans*. 640 F. App'x at 735. However, that court went on to note that the district court found *Rogers* unpersuasive in the case before it, because the *Rogers* figure was stated in dictum and did not involve a finding of harmless error. *Evans*, 640 F. App'x at 736. This Court agrees. *Rogers* involved whether the ALJ properly relied on a VE's testimony as to how <u>many</u> jobs actually existed and resolved the conflict between that testimony and other evidence. *Rogers*, 312 F. App'x 142. The issue of whether that number of jobs (11,000) was significant or not was never raised or discussed. In any

event, in *Rogers*, the ALJ made a finding of numerical significance and—had the issue been raised—the much lower "substantial evidence" standard would have applied. That is not the question before this Court. Here, the Court must decide whether no other reasonable ALJ could disagree.

The same problem plagues the Commissioner's reliance on *Garcia*. In *Garcia*, the claimant argued the ALJ erred in finding 20,500-22,000 jobs significant without first considering the factors listed in *Trimiar*, 966 F.2d at 1330.[6] *Garcia*, 817 F. App'x at 648. The court affirmed the ALJ's finding and stated in conclusion,

> Finally, overriding the bare numbers is the procedural fact that this case involves court review of a *finding* of numerical significance *made by the ALJ* and not a determination in the first instance that a particular number is significant under the circumstances. Numerical significance entails many fact-specific considerations requiring individualized evaluation and should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation. The ALJ found Garcia could perform jobs that existed in significant numbers in the national economy, and we do not presume to interpose our judgment for that of the ALJ.

*Garcia,* 817 F. App'x at 650 (alterations, quotation marks, and citations omitted). Here, the Commissioner does the opposite, asking this Court to substitute its judgment for that of an ALJ who never made such a finding. Affirming the ALJ's decision would require the undersigned to supply the determination that 84,000 folder jobs constitutes a significant number of jobs in the national economy. So far, 152,000 is "the lowest number of jobs" the Tenth Circuit has considered to be sufficient for application of harmless error. *Evans,*

---

[6] As the Tenth Circuit noted, the claimant in *Garcia* abandoned their initial suggestion that the sheer number of jobs identified by the ALJ was not significant, focusing instead on the *Trimiar* factors. *Id*. at 648 n.6.

11

640 F. App'x at 736.[7] Given the Tenth Circuit's preference that the ALJ evaluate numerical significance in the first instance and that the district court supply a dispositive finding only in exceptional circumstances, the undersigned declines to apply the harmless error standard and conclude that 84,000 jobs in the national economy is a significant number as a matter of law, such that "no reasonable administrative factfinder. . . could have resolved the factual matter in any other way." *Allen,* 357 F.3d at 1145. The ALJ's error at step five was not harmless.

## VI. Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for proceedings consistent with this Opinion and Order.

SO ORDERED this 23rd day of March, 2022.

                                       **SUSAN E. HUNTSMAN, MAGISTRATE JUDGE**
                                       **UNITED STATES DISTRICT COURT**

---

[7] If there was any remaining doubt as to whether the *Evans* court considered the *Rogers* decision as endorsing 11,000 jobs for the harmless error standard, this statement should resolve it.